# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

LAND'S END AT SUNSET BEACH
COMMUNITY ASSOCIATION, INC.,

    Plaintiff,

v.                                                   Case No: 8:17-cv-1740-T-30TGW

ASPEN SPECIALTY INSURANCE
COMPANY,

    Defendant.

## ORDER

Land's End at Sunset Beach Community Association, Inc. successfully defended itself against an Alaskan corporation for its use of "Land's End" in advertisements. In this suit, the Community Association argues its insurer, Aspen Specialty Insurance Company, had a duty to defend it in the underlying suit. Whether that duty arose requires this Court to determine what claims the Alaskan corporation brought—a task much more complicated than it sounds—and whether those claims were excluded under the Policy. After careful consideration, the Court concludes Aspen is entitled to judgment on the pleadings because the claims against the Community Association were excluded from coverage.

## FACTUAL BACKGROUND

**A. The Insurance Policy**

The Community Association operates a condominium complex in Treasure Island, Florida, and advertises short-term rentals of its condos. Aspen issued a commercial general

liability policy (No. CIUCAP001300-01) to the Community Association. The Policy provides coverage for "Personal and Advertising Injury" subject to certain exclusions. The relevant portions of the Policy, to which the Community Association cites in its Amended Complaint (Doc. 5) and Aspen cites in its Motion (Doc. 17),[1] are as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**
> 1. **Insuring Agreement**
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal advertising injury" to which this insurance does not apply….
>
> 2. **Exclusions**
>    This insurance does not apply to:…
>    i.  **Infringement Of Copyright, Patent, Trademark Or Trade Secret**
>        "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".
>
>        However, this exclusion does not apply to infringement, in your "advertisement", of a copyright, trade dress or slogan.
>        …
>
> **SECTION V – DEFINITIONS**
> 1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or

---
[1] Aspen also references a separate "personal advertising injury" offense for disparagement in its Motion. But the Community Association does not raise that offense in its Amended Complaint or in its response to the Motion, so the Court concludes that section of the Policy is unnecessary for resolution of the Motion.

services for the purpose of attracting customers or supporters. For the purposes of this definition:
   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
   b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

…

14. "Personal advertising injury means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
   f. The use of another's advertising idea in your "advertisement"; or
   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Doc. 5-1).

## B. The Claims against the Community Association

Land's End Acquisition Corporation ("LEAC") is a corporation that operates hotels and resorts in Alaska, including the Land's End hotel. (Doc. 5-10). LEAC owns the "LAND'S END" trademark, which it uses to advertise its hotels and resorts. (Doc. 5-10, ¶¶ 34–36).

In September 2015, LEAC sent the Community Association a cease and desist letter accusing the Community Association of improperly using the "LAND'S END" trademark. (Doc. 5, ¶¶ 12–13). After attempting to resolve the situation, the Community Association filed a declaratory judgment action against LEAC in the District Court for the Middle District of Florida seeking a declaration that the Community Association had not infringed on LEAC's trademarks.[2] In response, LEAC filed counterclaims and third-party complaint (the "Counterclaim") (Doc. 5-9), and then amended counterclaims and third-party

---

[2] The underlying case number was 8:16-cv-828-T-17JSS.

complaint (the "Amended Counterclaim"). (Doc. 5-10). The Community Association notified Aspen of the Counterclaim and Amended Counterclaim and requested a defense under the Policy. (Doc. 5, ¶¶ 35–63). Aspen denied the Community Association's request for a defense, arguing the claims against the Community Association were not covered. (Doc. 5, ¶¶ 35–63). Because the duty to defend could have arisen either based on the allegations in the Counterclaim or Amended Counterclaim, both must be reviewed.[3]

*1. LEAC's Counterclaim against the Community Association*

In its Counterclaim against the Community Association, LEAC alleged that the Community Association used "the LAND'S END mark in connection with short-term rental services … which creates a likelihood of confusion with LEAC's LAND'S END marks." (Doc. 5-9, Counterclaim ¶ 20). Based on this allegation, LEAC brought four causes of action against the Community Association: trademark infringement under the Lanham Act (Count I), false designation of origin (Count II), trademark infringement under Florida common law (Count III), and unfair competition under Florida common law (Count IV).

Each of the Counts incorporated the same general allegations and included claim-specific allegations. In Count I of the counterclaim, LEAC alleged that the "above-cited acts," referring to the use of the LAND'S END mark, constituted trademark infringement, "thereby creating a likelihood of confusion as to the source of origin, affiliation, approval

---

[3] While irrelevant to these proceedings, the Court notes the Community Association and LEAC stipulated to a consent judgment of trademark non-infringement, permanent injunction against interference with use, and dismissal of the counterclaims with prejudice. (8:16-cv-828-T-17JSS, Doc. 120).

or sponsorship of such services." (Doc. 5-9, Counterclaim ¶ 24). Count II alleges the Community Association used the LAND'S END mark "in promoting and marketing … thereby falsely designating the source of origin, affiliation, approval or sponsorship of such services." (Doc. 5-9, Counterclaim ¶ 30). Count III claims the general allegations (*i.e.* use of the LAND'S END mark) state a claim for trademark infringement. (Doc. 5-9, Counterclaim ¶ 36). And Count IV states the general allegations (again, the use of the LAND'S END mark) constitutes unfair competition given "the likelihood of confusion as to the source or affiliation, sponsorship or approval of [the Community Association's] services and activities and the relationship of such activities to LEAC." (Doc. 5-9, Counterclaim ¶¶ 39–40).

    *2. LEAC's Amended Counterclaim against the Community Association*

The Amended Counterclaim has more in-depth general allegations against the Community Association, but is basically the same. LEAC still alleges that the Community Association used the LAND'S END mark "in connection with condominiums that are leased as short term vacation accommodations in the same way that hotel rooms are leased as short term vacation accommodation." (Doc. 5-10, ¶ 50). LEAC alleges the Community Association's use of the LAND'S END mark began sometime after LEAC started using it. (Doc. 5-10, ¶ 47). LEAC also alleges the following:

> On information and belief, in many instances, Community Association appears to use the LAND'S END mark alone, as a trademark, not descriptively, without the proper full name of the property (e.g. Land's End at Sunset Beach or Land's End at Treasure Island), in connection with short-term room rental services …. This use of the LAND'S END mark creates a likelihood of confusion with LEAC's LAND'S END marks for the same or similar and related goods and services.

(Doc. 5-10, ¶ 52).

The Amended Counterclaim brings the same four causes of action as did the Counterclaim (and in the same order), but this time also brings a fifth action for declaratory judgment (Count V). As with the general allegations, some of the allegations are more in-depth in the specific counts of the Amended Counterclaim.

In Count I, LEAC again alleges that the acts cited in the general allegations (use of the LAND'S END mark) constitute trademark infringement "thereby creating a likelihood of confusion as to the source of origin, affiliation, approval or sponsorship of such services." (Doc. 5-10, ¶ 90). Count I also alleges the Community Association is using the identical mark for the same or related goods and services, targeting the same customers. (Doc. 5-10, ¶¶ 95–96).

The allegations Counts II and III of the Amended Counterclaim are unchanged from the Counterclaim.

In Count IV, LEAC alleges the Community Association's "use of the LAND'S END mark … without using their full name … is deceptive conduct within the meaning of the term as defined by Florida common law." (Doc. 5-10, ¶ 113). LEAC then alleges that it was damaged by the Community Association's "unfair competition by reason of the likelihood of confusion as to the source or affiliation, sponsorship or approval [the Community Association's] services and activities…." (Doc. 5-10, ¶ 114).

Count V does not allege damage to LEAC, but simply seeks a declaration as to whether the Community Association has any common law trademark rights. Importantly, the Community Association does not allege the duty to defend arose from Count V.

## JUDGMENT ON THE PLEADINGS STANDARD

A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). When considering such a motion, the Court must "accept the facts alleged in the complaint as true and draw all inferences that favor the nonmovant." *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). If it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint. As with a motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)).

## DISCUSSION

Before diving into the analysis, it would be useful to first go over two points. The Court will first address the law governing interpretation of insurance policies and the duty to defend, and will then lay out the Community Association's arguments as to why it believes the allegations in the Counterclaim and Amended Counterclaim fall within the personal and advertising injury coverage of the Policy. After that the Court will begin its analysis in earnest.

**A. General Law Governing Insurance Coverage Disputes**

The parties agree that Florida substantive law governs this insurance dispute. *State Farm Fire and Cas. Co. v. Steinberg,* 393 F.3d 1226, 1230 (11th Cir.2004) ("Because

7

federal jurisdiction over this matter is based on diversity, Florida law governs…."). Under Florida law, interpretation of an insurance policy is a matter of law to be decided by courts. *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015). Courts start by looking at the plain language of the policy, which governs unless there is an ambiguity. *Steinberg*, 393 F.3d at 1230. "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous, and must be interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *Id.*

Whether an insurer has a duty to defend "is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *Id.* "The merits of the underlying suit have no bearing on whether the duty is owed." *Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1142 (11th Cir. 2011). If the underlying suit brings even one claim that falls within the scope of coverage, the insurer is obligated to provide a defense for the entire dispute. *Id.* Any doubt about the duty to defend must be resolved in favor of the insured. *Id.* at 1142. But "[C]ourts need not stretch the allegations beyond reason to impose a duty on the insurer." *Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1144 (11th Cir. 2011).

So an insurer has a duty to defend unless either (1) all the claims in the underlying suit do not fall within the grant of coverage, or (2) "the complaint shows the applicability of a policy exclusion" as to all claims within the broad scope of coverage. *Auto-Owners Ins. Co. v. Elite Homes, Inc.*, 676 F. App'x 951, 954 (11th Cir. 2017) (citing *Keen v. Fla.*

8

*Sheriffs' Self–Insurance Fund*, 962 So.2d 1021, 1024 (Fla. 4th DCA 2007)). In the case of the latter, courts construe exclusions strictly against the insurer. *Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1309–10 (11th Cir. 2008), *certified question answered,* 29 So. 3d 1000 (Fla. 2010).

**B. Community Association's Arguments in Favor of Coverage**

For the Community Association to prevail in this action, this Court must conclude that at least one of the claims in the Counterclaim or Amended Counterclaim were within the Policy's coverage and were not clearly excluded, which would have triggered Aspen's duty to defend the Community Association. In its Amended Complaint, the Community Association describes why it thinks the Court should reach that conclusion.

First, the Community Association focuses on the definition of "personal advertising injury" in the Policy, specifically what it refers to as offenses (f) and (g). Offense (f) refers to the use of another's advertising idea in your "advertisement." Offense (g) refers to infringing on another's copyright, trade dress or slogan in your "advertisement."

Second, the Community Association argues that LEAC's claims against it in the Counterclaim and Amended Counterclaim fall within the scope of offenses (f) and (g). This is where things get more complicated. The Community Association acknowledges that LEAC did not bring explicit claims for "use of another's advertising idea" or for "infringing on another's copyright, trade dress or slogan." Instead, the Community Association argues that some of the allegations in the underlying suit fall within the scope of these offenses, which triggers coverage. Hopefully, this explanation puts the Community Association's following arguments in context so they are easier to understand.

9

The Community Association argues the allegations in the unfair competition claims (Counts IV of the Counterclaim and Amended Counterclaim) fall within the scope of offense (f), the use of another's advertising idea (the "Advertising Idea Offense"). Generally, an advertising idea "can be any idea or concept related to the promotion of a product to the public." *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1188 (11th Cir. 2002). The remainder of the definition is unambiguous. *IVFMD Florida, Inc. v. Allied Prop. & Cas. Ins. Co.*, 679 F. App'x 769, 773 (11th Cir. 2017) (analyzing the same definition of "personal advertising injury"). In this case, the Community Association argues that LEAC's allegations that it used "LAND'S END" in advertisements is an allegation that the Community Association used LEAC's advertising idea. (Doc. 5, ¶¶ 64–81; Doc. 21, pp. 6–9). So, the Community Association argues, the allegations in the unfair competition counts state a claim within scope of the personal and advertising injury coverage via the Advertising Idea Offense.

The Community Association also argues that the allegations in the underlying suit fall within the scope of offense (g), infringement on another's slogan (the "Slogan Offense"). The Community Association argues the Court should give the dictionary definition to the word "slogan," which is not defined in the Policy. (Doc. 5, ¶¶ 82–93; Doc. 21, pp. 9–11). Applying that definition, the Community Association argues that the Court should conclude "LAND'S END" is a slogan, and that LEAC's claims that the Community Association used "LAND'S END" in its advertisements states a claim within the scope of the personal and advertising injury coverage under the Slogan Offense.

Finally, the Community Association argues that exclusion for "Infringement of Patent, Copyright, Trademark or Trade Secret" (the "IP Exclusion") does not exclude coverage for these offenses given the allegations in the underlying suit. Again, this argument gets somewhat complicated, so the Court will try to succinctly explain the Community Association's position.

As to the Advertising Idea Offense, the Community Association argues that the IP Exclusion is inapplicable in the context of the unfair competition claim of the Amended Counterclaim. (Doc. 5, ¶ 121) (citing to the allegations of Count IV of the Amended Counterclaim, and not to the allegations of the Counterclaim).[4] That is because, "it is possible to be liable for unfair competition even when trademark infringement is not present if use of a similar but non-infringing mark or device is combined with unfair practiced in a manner which is likely to deceive purchasers regarding the origin of goods under all the circumstances." (Doc. 5, ¶ 122).

Alternatively, the Community Association argues that "even for those claims premised on trademark infringement, potential coverage arises even if there is no basis for trademark infringement." (Doc. 5, ¶ 123). Though somewhat confusing, the gist of this argument is that LEAC at some point realized it was unlikely to prevail on the trademark

---

[4] The Community Association takes liberties with LEAC's allegations against them in making this argument. Whereas Count IV of the Amended Counterclaim accuses the Community Association of engaging in deceptive conduct by *using* the LAND'S END mark without using its full name (Doc. 5-10, ¶ 113), the Community Association restates LEAC claim as alleging the Community Association's deceptive conduct arose from *failing to use* the LAND'S END mark without using its full name (Doc. 5, ¶ 121). It is unclear why the Community Association made this alteration. Regardless, it is the allegations in the underlying suit that control—not the Community Association's description of those allegations. *Steinberg*, 393 F.3d at 1230.

infringement claims, and so added allegations in the Amended Counterclaim that were broader than trademark infringement. (Doc. 21, p. 12–13).

The Community Association also raises an argument in its Response, which is not in its Amended Complaint, that the false designation of origin count (Count II) states a claim for an Advertising Idea Offense that is not barred by the IP Exclusion. Although not argued explicitly, the advertising idea that was used would, again, be the LAND'S END mark. The Community Association argues that because use of the LAND'S END mark in Count II would not be for trademark infringement—but, rather, for false designation of origin—the IP Exclusion would not apply.

While the Community Association argues that the IP Exclusion is inapplicable to the Advertising Idea Offense, it argues that the Slogan Offense falls within an exception to the IP Exclusion. Specifically, the IP Exclusion states: "However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan." (Doc. 5-1, p. 10).

**C. Policy Coverage and Applicability of the IP Exclusion**

With that lengthy background and explanation, the Court can make relatively short work of its analysis. First, the Court will determine whether the claims in the underlying suit contained allegations that the Community Association used LEAC's advertising idea or its slogan (*i.e.*, whether the underlying suit made claims within the scope of coverage). Then the Court will determine whether any covered claims were excluded by the IP Exclusion (*i.e.*, whether the underlying complaint shows the applicability of an exclusion).

*1. The underlying suit alleged the Community Association used LEAC's advertising idea, but did not allege it used LEAC's slogan*

Aspen concedes that the unfair competition counts of the Counterclaim and Amended Counterclaim fall within the broad definition of an "advertising idea." So the Court accepts the Community Association's argument that the underlying suit alleged claims that fall within the Advertising Idea Offense, included in the broader definition of "personal advertising injury," for which the Policy provided coverage.

The Court rejects, though, the idea that the underlying suit alleged the Community Association used LEAC's slogan. LEAC never referred to "LAND'S END" as a slogan in the Counterclaim or Amended Counterclaim, and did not bring an explicit action for slogan infringement. LEAC also alleged in the Amended Counterclaim that the Community Association appeared to use the LAND'S END mark alone, "not descriptively." (Doc. 5-10, ¶ 52). In other words, not as a slogan. While not dispositive, that is telling.

The Court also declines to conclude that any reasonable interpretation of the policy would allow "LAND'S END" to be considered a slogan under these circumstances.[5] The Policy makes a distinction between a "trademark" and a "slogan." (Doc. 5-1). This is abundantly clear because the IP Exclusion bars coverage for trademark infringement, but expressly permits coverage for slogan infringement. So it would make little sense for this

---

[5] Neither the Eleventh Circuit nor any Florida appellate court have addressed the issue of whether a trademark can constitute a slogan for the purposes of an advertising injury. Two sister courts in the Southern District of Florida, though, have directly addressed the issue and reached the same conclusion as does this Court. *See James River Ins. Co. v. Bodywell Nutrition, LLC*, 842 F. Supp. 2d 1351, 1354–55 (S.D. Fla. 2012); and *Auto Mobility Sales, Inc. v. Praetorian Ins. Co.*, No. 14-CV-80094, 2015 WL 3970578, at *3 (S.D. Fla. June 30, 2015).

Court to allow "LAND'S END" to serve as both a trademark—as LEAC expressly alleged—and also conclude it is a slogan.

This result is supported by rulings in other circuit courts. In *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 618–19 (2d Cir. 2001), the Second Circuit explained that "'trademarked slogans' are phrases used to *promote or advertise* a house mark or product mark, in contradistinction to the house or product mark itself…. Thus, it seems clear that a "slogan" must be something, *other than the house mark or product mark itself,* that provides such a reminder." (italics in original). That reasoning makes sense, and the Court adopts it as well.

2. *The allegations that the Community Association used LEAC's advertising idea are excluded from coverage pursuant to the IP Exclusion*

Having concluded that the allegations in the underlying suit can safely be said to fall within the Advertising Idea Offense definition of personal advertising injury—but not within the Slogan Offense—the Court must now determine what effect, if any, the IP Exclusion has on the coverage. For the reasons below, the Court concludes that the IP Exclusion bars coverage for the claims arising from the Advertising Idea Offense.

As explained above, the Community Association argues that the IP Exclusion is inapplicable to the Advertising Idea Offense alleged in the unfair competition counts because a claim for unfair competition is broader than a claim for trademark infringement. It is true that an unfair competition claim *could* be broader than a trademark infringement claim. But the Court is not concerned with what *could* be; instead, the Court must look to

14

the allegations in the Counterclaim and Amended Counterclaim to determine if LEAC's allegations of unfair competition are broader than trademark infringement.

Having closely reviewed LEAC's claims, the Court concludes that all LEAC alleges is that the Community Association infringed on its LAND'S END mark. In the Counterclaim, LEAC incorporates the general allegation that the Community Association used the LAND'S END mark, which gave rise to all the causes of action. (Doc. 5-9, ¶¶ 39–40). In the Amended Counterclaim, LEAC again alleges that the Community Association used the LAND'S END mark, which created a likelihood of confusion. (Doc. 5-10, ¶ 52). In the Amended Counterclaim's unfair competition count, it alleged the damage from the "unfair competition [was] the likelihood of confusion …." (Doc. 5-10, ¶ 114). All of the allegations go back to the same premise: the Community Association infringed on LEAC's LAND'S END mark. Nothing beyond that is alleged, and this Court "need not stretch the allegations beyond reason to impose a duty on the insurer." *Trailer Bridge, Inc.*, 657 F.3d at 1144; *see also Power Corp. v. Amerisure Ins. Co.*, No. 2:12-CV-192-FTM-29, 2013 WL 4523490, at *6 (M.D. Fla. Aug. 26, 2013) (concluding a claim for Federal False Advertising arose from trademark infringement, and applying the identical IP Exclusion to conclude the insurer owed no duty to defend against the claim).[6]

Having made that determination, it is clear the claims are excluded. The IP Exclusion states that there is no coverage for "'Personal and advertising injury' arising out

---

[6] The analysis applies equally to the Community Association's argument in its response that the false designation of origin counts state a broader claim than trademark infringement, so the Court will not belabor the point and address it separately.

of the infringement of … trademark." (Doc. 5-1). Because the IP Exclusion bars coverage for claims arising out of trademark infringement, and the underlying suits claims arose out of trademark infringement, the claims are clearly excluded from coverage.

And contrary to the Community Association's argument, the second sentence of the IP Exclusion does not apply. The second sentence states, "Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your 'advertisement'." (Doc. 5-1). So, the Community Association argues, the Advertising Idea Offense claims are within an exception to the IP Exclusion. But the exception does not apply to trademark infringement—it only applies to infringement of other intellectual property rights. *U.S. Fire Ins. Co. v. Cyanotech Corp.*, No. CIV. 12-00537 JMS, 2013 WL 5755338, at *12 (D. Haw. Oct. 23, 2013) (explaining, "the [identical] exception only applies to 'other intellectual property rights.'").

And this result makes sense. Given the broad definition of advertising idea under Florida law, all cases of trademark infringement involving advertisements would fall within the exception to the IP Exclusion at issue if the Court were to adopt the Community Association's position. That would make the exception swallow the IP Exclusion, which cannot be the intent.

## **CONCLUSION**

The Community Association is correct that LEAC made claims against it in the underlying suit that fell within the broad grant of the Aspen Policy's "personal and advertising injury" coverage. Specifically, LEAC alleged the Community Association infringed on its LAND'S END trademark, which gave rise to multiple causes of action in

the Counterclaim and Amended Counterclaim. But because all of the causes of action were dependent on the Community Association's infringement of the LAND'S END trademark, the IP Exclusion unambiguously barred coverage under the Policy. Because it was clear that none of the claims LEAC alleged against the Community Association were covered by the Policy, Aspen did not owe a duty to defend the Community Association in the underlying suit.

Accordingly, it is ORDERED AND ADJUDGED that:

1. Defendant Aspen Specialty Insurance Company's Rule 12(c) Motion for Judgment on the Pleadings (Doc. 17) is GRANTED.

2. The Clerk is directed to enter a declaratory judgment in favor of Defendant Aspen Specialty Insurance Company and against Plaintiff Land's End at Sunset Beach Community Association Inc., declaring that Aspen Specialty Insurance Company had no duty to defend Land's End at Sunset Beach Community Association Inc. in case 8:16-cv-828-T-17JSS.

3. All pending motions are denied as moot.

4. The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida, this 3rd day of October, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record